Case number 25-1533, Western Missouri, Jabbok Schlacks et al. v. Neil Chheda et al. Good morning, Your Honors. Joseph Palmore here for defendants. The district court committed two independent legal errors and reversal on either one is sufficient to compel this case to arbitration. First, the court erred by deciding for itself the question of the arbitrability of this dispute rather than leaving that question for the arbitrator. Second, having taken it upon itself to decide that question, the court got it wrong. In particular, it erred in deciding that equitable estoppel did not bar the plaintiffs from resisting arbitration here. I'd like to start with the first issue because it's logically anterior, the delegation issue. And there's a lot here that's not disputed. There's no dispute that there is a valid arbitration agreement. There's no dispute that it meets the clear and unmistakable standard because it incorporates the JAMS rules, giving arbitrators jurisdiction over threshold questions of arbitrability. And there's no dispute that JAMS Rule 11b identifies who are the proper parties to the arbitration as a threshold issue of arbitrability. Given all of that, this Court's decisions in Sadler and Eckert-Wardell tell us what the answer is here. The answer is the plaintiff's objection as non-signatories to being required to arbitrate alongside the business entities that they own and control is a threshold question of scope and enforcement that is for the arbitrator to decide. So in Eckert-Wardell, this Court said that whether a particular arbitration provision may be used to compel arbitration between a signatory and a non-signatory is a question, a threshold question of arbitrability. But wasn't that a successor and interest case as well? Wasn't that at issue? That was the issue. So there are a whole host of equitable doctrines that can bring non-signatories into an arbitration provision. In that case, there was a successor company and there was an equitable estoppel argument that that successor company could compel arbitration even though it itself was not a signatory to the arbitration agreement. But then in Sadler, we have the inverse situation where this Court applies the same rule in the situation like this where it was the non-signatory that was objecting. And did in Sadler, though, did we really address that question? It almost seemed more to be whether the claim was arbitrable. I think that you're talking about the add-on of the husband. I didn't read that case as really answering this question. It's sort of lingering in the background. But I'm not sure that it's got a ruling that would decide this case. Well, Your Honor is right that the focus of the written opinion was on the other, the scope of the arbitration provision. But it's inescapable that the judgment and disposition addressed the non-signatory issue because that was an independent basis for the district court's judgment there. Terry Sadler said, I didn't sign this mortgage agreement. I cannot be compelled to arbitrate. Now, both he and his wife, Elsie, had a separate argument about the scope of the arbitration provision. Both were briefed in this Court. The Court asked for supplemental briefing on this threshold issue of arbitrability. The parties addressed both issues. And then this Court reversed, sending all issues, all questions to the arbitrator, including the non-signatory claim that Terry Sadler's argument that he couldn't be bound. Does it matter that that was pre-Rent-a-Center? No, I don't think so because it applied the same, the Rent-a-Center rule, which was if there's a delegation clause, it needs to be enforced. And then if you look at the Tenth Circuit's decision in Casa Arena, it's entirely consistent. It reaches the same conclusion, and it does explain, it does have an explanation. The district court there said the question about the question of whether a non-signatory could be compelled to arbitrate was a question of contract formation and therefore had to be decided by the court in all instances. It's very similar to the argument that the plaintiffs make here. The Tenth Circuit said that was wrong. There was no question of contract formation because there was no question that there was a valid contract, there was a valid arbitration provision, and there was a valid delegation provision. It was a question of enforcement. And questions of enforcement go to the arbitrator under the very same jams rule, 11B, was cited there that's at issue here. And it says the arbitrator has authority to decide who are the proper parties to the arbitration. Well, at least under Delaware law, they make a very clear distinction, right, between non-signatory, who is trying to enforce the arbitration, and whether a non-signatory is trying to enforce a signatory or the other way around. Doesn't that distinction matter? I don't think that distinction matters. I think that distinction may matter on the second issue, on the substance of whether these non-signatories can be required to arbitrate. But those distinctions, if they're there, don't matter on the threshold question of delegation. So to the extent that they want to argue that under Delaware law they cannot be required to arbitrate alongside their business entities, that's a question that they can tell they can explain that to the arbitrator. And if they're right about that, they're going to be right back in the Western District of Missouri. The arbitrator is going to send it back. Because they are non-signatories. I mean, everybody agrees. Everyone agrees that the Schlax brothers are non-signatories. But there are a whole host of Delaware principles that can nonetheless require them to arbitrate. And under the plain language of this delegation and its incorporation of the JAMS rules, that's a question for the arbitrator. They can make all those arguments to the arbitrator. And the arbitrator will decide whether they're bound or not. And if they're right about those arguments, then they'll be back in Federal District Court. And I will one more question on this distinction between formation and enforcement that the plaintiffs stress. The Supreme Court's decision in Arthur Anderson, which says that State law questions State law doctrines can be used to require, can be used to enforce arbitration provisions by or against non-signatories. And the word enforcement and the concept of enforcement is throughout Arthur Anderson. So courts, just like in Casa Arena, courts view this question of whether a non-signatory is obligated to arbitrate as a question of enforcement. And under Sadler, Casa Arena, Eckert, Wardell, that's a question for the arbitrator as a matter of enforcement of the delegation clause. Unless the Court has further questions on the delegation question, I'm happy to move to the substance of the equitable estoppel question. So first of all, the three-part test in cases like Flotec, Capital Group, is what Delaware courts apply here. My friends on the other side point out that a lot of these cases are forum selection clause cases. But both in a matter of Delaware law, the U.S. Supreme Court in Viking River has clearly stated that an arbitration provision is just a specialized kind of forum selection clause. So it's treated exactly the same. The BuzzFeed case out of Delaware applies the very same three-part test to an arbitration provision. So I want to just kind of lay that out at the outset that the forum selection clause cases are fully applicable in this context. And so a lot of the, when you look at the three-part test, I think two of the three are not disputed. They're no longer disputed. There's never been a dispute that there's a valid arbitration clause here. If you jump down to the third factor, there no longer is a dispute. There was previously, but there no longer is a dispute that the substance of this dispute falls within the broad terms of the arbitration provision. The district court held that it did not, despite its use of the, you know, quintessentially broad arising from or related to language. We challenged that in our opening brief, and the plaintiffs didn't respond in their response brief. So now that it's, I read that as conceded, that this dispute is encompassed within the arbitration clause. So that takes care of factors one and two, and that leaves, one and three, I'm sorry, and that leaves factor two, which is the close relationship. And the close relationship here is satisfied by the direct benefit that the plaintiffs received via the TKF agreement. And there are two kinds of direct benefits, either one of which is sufficient to count. One is a non-pecuniary benefit. They are named the managing members of not only TKF, the overall fund, but also of TKF GP, the general partner that runs the fund. Those are important offices that give them control of this entity. And under the Delaware court's decision in Baker, where someone was named to a non-pecuniary benefit pursuant to an agreement, what the court held in Baker was that was a sufficient direct benefit to require them, even when litigating as an individual, as a non-signatory, to be subject to a form selection. Why doesn't that just collapse the difference between individual and the entity? There seems to be no time when it wouldn't be a direct benefit. Well, I'm not sure that that's necessarily right, because you have to look. These are all equitable cases that are case-specific. Well, you said a board member, a board member, a managing party. Like, what, in those categories, would there, what would be the distinguishing factor that wouldn't be the direct benefit? Well, you'd have to have the other factors would have to be satisfied, too. And I think the third one is critical, right? The dispute has to be encompassed. Okay, on factor two. On factor two, what would be the distinguishing factor? Well, I think if they are named in the contract, that is a direct benefit, and that's going to satisfy that factor, and that's what the Baker case holds. But they still have to do the other ones. It can't be some random dispute that has nothing to do with the contract, because it has to fall within the language of the dispute, the substance of the dispute has to fall within the language of the arbitration provision. That's an important limitation. It shouldn't be minimized here just because it's not contested. But they no longer contest that their dispute about the option shares is encompassed within the broad language of this arbitration provision. And they got a benefit, a direct benefit, through their appointment as officers managing members of these entities. Not only that, but they also got pecuniary benefits, because the general partner that they own and control is going to receive distributions, carried interest, a lot of money through purposes of this fund. And the Delaware decisions, particularly Capital Group, show that even when it's an entity that an individual controls receiving the pecuniary benefit, that that counts as a direct benefit for purposes of equitable estoppel. So in the Capital Group case, an individual who signed a contract only in her capacity as a trustee was found to be bound by a form selection clause, because she, as the trustee, had a kind of a beneficial interest in the corpus of the trust. It's very similar to this situation here. And the trustee does seem a little different from a separate individual in the corporate entity. I think it presents the same capacity issue. She says, I signed that only as a trustee, not in my individual capacity. But even putting that one aside, River Valley and Ninespot are cases where someone who owned an entity that was going to receive benefits under the contract was found to be subject to a form selection clause under equitable estoppel. I see I'm into my rebuttal time, and I'll come back. Okay, thank you. Your Honors, may it please the Court, Vincent Schmaltz on behalf of the Appellees. Arbitration agreements, like all contracts, are products of consent, and parties have to agree to arbitrate. The Supreme Court has held in multiple cases that in situations where there's a non-signatory to an arbitration agreement, and specifically a delegation clause, there must be clear and unmistakable evidence of consent or an agreement to arbitrate. In this case, the district court correctly concluded that the court was required to determine in the first instance whether there was clear and unmistakable evidence that plaintiffs intended to be bound by the arbitration clause and its delegation provision in an agreement they didn't sign, they didn't invoke in their declaratory judgment complaint, and that did not exist until two years after the contracts that are being litigated in the district court were signed. Then the district court properly concluded there was no clear and unmistakable evidence of principles of equitable estoppel or agency. I note the appellants have dropped their agency argument. Accordingly, the district court properly retained jurisdiction over this case, and it ruled on a motion to dismiss claims. I want to make a couple of quick points. I.S. Joseph and Shockley, both Eighth Circuit opinions, and Shockley specifically relies on Rent-A-Center, and I.S. Joseph specifically relies on John Wiley and Sons. Establish this concept, and this is from John Wiley and Sons, which is cited in I.S. Joseph, the duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does, in fact, create such a duty. And here, that's exactly what we have. The Schlaxes are non-signatories who object to the TKFLP agreement binding them in any way. To send them to arbitrate first, only to get potentially a decision that they're not bound to arbitrate, would run afoul of the John Wiley principle that I.S. Joseph stands upon and that Shockley stands upon. So how do you distinguish Sadler and Eckert-Vardell? Two ways. Eckert is actually a consenting non-signatory. If you go back and reread that case, you'll find that FJM Properties is the successor to the Fishers who signed the arbitration agreement. Who is it that's objecting to FJM Properties being in the arbitration? Not FJM Properties. Eckert, the architect. The architect goes down the road and then goes, wait a minute, I woke up one day and I realized this isn't the guy who signed the arbitration provision with me. That is a consenting non-signatory. And even though this court didn't state that specifically, that is a clear distinguish factor. Sadler, I think, is very distinguishable in that if you ran the analysis out on equitable estoppel, you sure as heck would have found that the husband was bound by principles of equitable estoppel. He lived in the trailer home that the loan was based on. He's one of the people who packed up their stuff in the dark of night and left the trailer home while they weren't paying their bills. It was marital property. It would have been determined to be marital property. He was a clear beneficiary of the loan. He lived in the place and he was clearly deficient in trying to skip the loan, which they sued for specific performance on, or they actually used their remedies, you know, to take the trailer and sell it in a deficiency sale. I think those cases are clearly distinguishable. I think Your Honor is correct that Sadler doesn't directly address that point, but I surely think had it, it would have found the principles of equitable estoppel apply. Principles of equitable estoppel here. I want to talk about direct and indirect benefits. Pardon me. The concept that Baker stands for the proposition that if I have an entity and I get appointed to the board because of that entity, that's a direct benefit to me, misreads Baker. And Baker's a funky case. In Baker, Baker was appointed to the board because he was party, he was a member of an entity that signed a shareholder's agreement. The shareholder's agreement said you can't sue under this agreement. You can't go into Delaware court and sue. Well, Baker got kicked off the board. So he goes and files a 225 action in Delaware Chancery Court saying, I want to be back on the board. Chancery Court says you can't do that.  Because the entity that appointed you couldn't do that. You can't do it. This is the prime example of embracing an agreement if ever there was one. I get appointed to the board because of the entity I work for, and the entity I work for signed an agreement, which is, by the way, the agreement that gave it the right to have a board seat. I sue to keep my board seat. I am embracing that agreement. That is the prime case in which I should be stopped. I want to separate myself. Well, the entity couldn't have done this, but I'm not the entity, and I didn't sign. I'm not going to do it. That, by the way, I think is equitable. Estoppel has it written all over it. And that's what I think is important. Appellants make a big deal out of direct benefit. Direct benefit is just one test that the case has set out on determining whether or not you've embraced an agreement. And I think this is really, really important. Flint Code sets out the three ways in which you can embrace a contract. One is a direct benefit. I actually think FLOTEC is that the appellant site is very instructive there. FLOTEC is a case in which there were a series of intertwined agreements all negotiated together. And, in fact, the supply agreement that was at issue in litigation was attached to as an exhibit the agreement that had an arbitration or a form selection clause in it. And there the FLOTEC sub, which was the non-signatory, signed that supply agreement in order to get the supply of a chemical that it needed to do its manufacturing. In other words, the supply agreement that was part of a series of conjoined agreements. By knowingly accepting, Vice Chancellor Laster said, by knowingly accepting that benefit, they bound themselves to the form selection clause. That is different than Flint Code's other ways in which you can embrace a contract. Consistent insistence that some provisions are enforced in your favor, but avoidance of others. That's the kind of situation that you'd embrace an agreement. And then the final one is a non-signatory that sues to enforce provisions of a contract but tries to avoid other provisions. I'd suggest the Baker case, the board seat case on which the appellants rely, is really an example of that form of embracing a contract. The court talks about it as a direct benefit, but it really is I embrace the agreement. I am the board member because of the agreement through which I was appointed. I want to sue to get back on the board. I have to own the contract that ultimately appointed me. I think the cases like River Valley and Ninespot are interesting and very distinguishable. I think it's really important to note them. Appellants put a lot in their reply brief on River Valley and Ninespot. In those cases, Ninespot's interesting because GPI, the non-signatory, is actually the driver behind the entire deal. And GPI is supposed to get stock because of a stock purchase agreement that GPI behind the scenes is negotiating, that GPI behind the scenes is funding, that GPI behind the scenes ultimately bails out on. And so to say that GPI ought to be bound by the arbitration provision or the form selection provision in an agreement that he drove and the benefits of which he was to receive is a perfect example of estoppel. It's very different than TKFLP, which again is formed two years after the option agreements that are being sued on in this case. River Valley is equally distinguishable because the defendant received a direct monetary benefit from an agreement that he negotiated. So there's a stock agreement, an API, an asset purchase agreement, and he ends up getting a benefit from a redemption that he agreed. His stock gets redeemed when that purchase agreement is signed. He actually reviews the purchase agreement in negotiating his own separate agreement to get a very direct benefit. Those situations are very, very different than Willie and Javik Schlaks might someday get a derivative benefit of some money from TKFLP. By the way, money that will have nothing to do with the option agreements that are at issue here. I think it's also really important factually to note that the option agreements that are being sued on, the fraud counts that relate to fraudulent inducement have been dismissed by the district court. But those claims were that you defrauded me because you promised me you'd put this stock into an agreement or into a venture fund that we never formed. And when we formed a venture fund two years later, it actually has a provision that specifically says you don't put stock in here. It says you put money. The members put money in. In other words, the agreement ultimately formed doesn't even contemplate provision of stock. So the idea that the option agreements under which Willie and Javik are suing, they somehow get a benefit out of TKFLP, it would be massively indirect and unrelated to the agreements that they're suing on. I thought I heard Mr. Palmer say that the first and third of the capital group factors are no longer in dispute. Is that right? I think that when you challenge an arbitrability clause and you say I'm not a party to that arbitrability clause, you are challenging its validity. Its validity as it applies to you, and you're challenging the scope as it applies to you. You're saying I'm not even a party to that. Do I need to also tell you all the ways in which if I were a party it doesn't apply to me? I think that is a convenient reading of our briefing. I think we are very clearly saying it doesn't apply to us at all in any way. It's invalid as to us. It's invalid as to this dispute. I'm ahead of time. I'm a trial lawyer so I probably could have more to say, but I think I've said what I need to say. If you have any more questions, I'm happy to answer them. Hearing none, thank you. Thank you for your time. My friend on the other side I think tried to do a rewrite of Sadler standing here at the podium and suggest that Sadler was a decision on the merits of the equitable estoppel claim involving Terry Sadler. That's refuted by the plain language of the opinion. The final sentence says we vacate the district court's order and remand to that court with instructions to grant Greentree's motion to compel arbitration, leaving the disputes, plural, about arbitrability to the arbitrator. It was a straight-up enforcement of the delegation clause. He mentioned I.S. Joseph. That's an old case pre-Rent-a-Center, and there was no delegation clause in I.S. Joseph, as the court itself pointed out. Shockley is the quintessential formation case. There was no contract at all. There was no offer and acceptance. And here there's no dispute that there is a valid contract. They're making a question about who, an argument about who's subject to it. And, again, under Casa Arenas, Sadler's implicit holding, that's a question of enforcement for the arbitrator to decide. On the merits, they say that they didn't invoke the TKF agreement in their complaint. They do, in substance, repeatedly. We counted up 43 times. They talk about the E.S. Venture Fund in their complaint, that their whole theory is that these option shares were supposed to go to the E.S. Venture Fund. And then they say themselves that the TKF was the embodiment of the E.S. Venture Fund. Now, counsel says, well, if you look at the agreement, it doesn't kind of support our theory because it doesn't say anything about shares being donated. But just because it's not helpful to them, doesn't mean they pled it into direct relevance in this dispute because of their complaint. Is the board seat, the owner, the board seat or the managing partner, whatever it was, is that the only direct benefit that you assert? No. That's the non-pecuniary direct benefit, but there are pecuniary benefits to the carried interest and the distributions to the general partnership. And that's where we go into capital group nine spot in those cases. That's a pecuniary benefit that counts. And then I think we're all in agreement now that there's a whole separate strand of the equitable estoppel law that allows you to bring in a party if their claims kind of rely on an agreement. And for the reasons that I just went into, the repeated references to the E.S. Venture Fund, the acknowledgement that TKF is the embodiment of the E.S. Venture Fund shows that this dispute cannot be litigated without reference to the document that created that fund and outlines the distribution obligations of its members. Thank you, Your Honor. Thank you, Counsel. It's a complex case. The argument was helpful. Thank you. And the case is submitted and we'll do our best to figure it out. Thank you.